IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUDITH UPDEGRAFF, an Indiana citizen, | ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BRAESIDE CONDOMINIUM MANAGEMENT, LTD., an Illinois Corporation, HARBOUR CLUB CONDOMIUNIUM ASSOCIATION, INC., an Illinois Corporation, and JOHN LACH, an Illinois citizen, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT**

**I.     Parties**

1.     Plaintiff, Judith Updegraff, is an individual and citizen of the State of Indiana and demands a jury.

2.     Defendant Braeside Condominium Management, Ltd., is an Illinois corporation with a principle place of business in Northbrook, IL. It is, therefore, a citizen of the State of Illinois.

3.     Braeside Condominium Management, Ltd., was the manager of the condominium at all times relevant to this complaint ("the Manager")

4.     Defendant Harbour Club Condominium Association, Inc. ("the Association"), is a not-for-profit association incorporated under the laws of the State of Illinois, with a principal place of business in Wauconda Illinois. It is, therefore, a citizen of the State of Illinois.

5. Defendant John Lach, is an Illinois citizen, and the owner of a condominium unit at Harbour Club, in Wauconda Illinois, and at all times relevant to this complaint was Plaintiff's landlord.

## II. Jurisdiction and Venue

6. Jurisdiction exists under 28 U.S.C. 1331 because there exists complete diversity of citizenship between the Plaintiff (an Indiana citizen) and all Defendants (all of which are Illinois citizens) and the amount in controversy exceeds $75,000.

7. Venue is proper in this district under 28 U.S.C. 1391(b) because a substantial part of the events and/or omissions giving rise to the claim occurred in this District and because each of the Defendants can be found in this District.

## III. Cause of Action

8. In approximately July of 2015, Ms. Updegraff noticed a substantial amount of water in the unit she rented, in the hall closet below a heater/air conditioner maintained by the building.

9. On or about July 26, 2015, the Manager, on behalf of the Association, sent a maintenance man and a plumber to examine the issue. The maintenance person told Plaintiff that other similar complaints had been made.

10. They cut two small holes in the closet drywall and routed a pipe and said he'd come back the following week to patch the drywall.

11. John Lach came and replaced a tube, which only helped slightly and did not repair the situation.

12. The carpet front of the closet was constantly wet, but there was no visible mold on the carpet yet.

13. Rather than replace the carpet, Defendants simply put a fan on the it – this made the situation worse by making the toxins airborne.

13. Defendant Lach claimed to Plaintiff he was talking to the Association and the Manager, but was not making progress.

14. A management company representative, Judy Howell, was nearby the property in October 2015 for a wedding, and said they would investigate.

15. On or about October 9, Updegraff opened the guest closet, which was adjacent to what her son called the "cess pool," and she saw what looked like bugs (the looked like mites) and visible mold.

16. Updegraff took pictures and sent them to Lach.

17. On October 12, 2015, Lach claimed he forwarded the pictures to the association with a strong letter (via email) and a voicemail.

18. On October 15, 2015, Lach claimed he had spoken to the President of the management company and they would be meeting the next day at the apartment to review the situation and get the matter resolved.

19. In late October, ServPro had provided a bid to the Association for remediation.

20. Due to Association and delay by the Manager, Lach stated he would pay ServPro directly.

21. ServPro scheduled a remediation on or about November 3, 2015.

22. ServPro also worked on 4 other units that may have been impacted by the mold.

23. ServPro refused to give Ms. Updegraff a business card because they claimed they worked exclusively for the Association.

3

24. On or about November 13, 2015, Ms. Updegraff noticed that her bathroom ceiling had "bubbled" from water.

25. Ms. Updegraff advised Lach, who told her to put a bucket under the leak, which she did.

26. Maintenance was called, and when he tried to cut a piece of the ceiling to see if and where a pipe was leaking, portions of the entire ceiling collapsed.

27. Throughout this entire process, Plaintiff sent Defendants and their agents pictures and permitted visual inspection.

28. Due to neglect and delay by the Defendants, however, there was no prompt effort at remediation. Areas of drywall were removed, but not replaced. The ductwork was not cleaned.

29. By mid-November 2015 the problem had spread to the bathroom, where a portion of the ceiling collapsed. All the while, Ms. Updegraff suffered physically: her joints ached, she had trouble breathing, blurred vision, lightheadedness, insomnia, diarrhea, nose and sinus problems, red and swollen face, burning eyes, sore throat, coughing, memory problems, and anxiety.

30. Throughout the holidays and winter, Plaintiff suffered.

31. Indeed, when the maintenance man came at the end of January 2016, he stated the place smelled of mold. At that time, she was forced to vacate the unit.

32. In May 2016, Assured Bio Labs, LLC found high levels of Stachybotrys, the toxic indoor mold that has been notorious for causing "sick building syndrome." Stachybotrys has been widely reported in medical journals as producing a mycotoxin called trichothecenes which cases sore throat, chronic fatigue, nosebleeds, memory loss, irritability, and even damage to internal organs.

4

33. The symptoms referred to in Paragraph 32 are the precise symptoms suffered by Plaintiff Updegraff.

34. As a result of Defendants' conduct, jointly, severally, and in combination, Ms. Updrgraff has lost her job, her home, many of her possessions and her good health.

## IV.    Claim for Relief - Negligence

35. Defendants, and each of them, had a duty to maintain the premises in a safe and habitable manner, prevent floods and leaks, and make timely and reasonable repairs.

36. Defendants, and each of them, breached this duty as alleged herein.

37. As a direct and proximate result of Defendants' breach of duty, Plaintiff was damaged as alleged herein.

WHERFORE, Plaintiff JUDY UPDEGRAFF, requests judgment in her favor, and against Defendants, jointly and severally, in an amount to be proved at trial but in excess of $75,000, plus costs and any other relief the Court deems proper and just.

    Respectfully Submitted,
    JUDY UPDEGRAFF

    /s/ Christopher V. Langone
    _____
    By One of Her Attorneys

Christopher V. Langone
Mark T Lavery
Langone, Batson & Lavery LLC
17 N. Wabash, Ste. 500
Chicago, IL 60602
(312) 720-9191
clangone@langonebatson.com
mlavery@langonebatson.com